## Case No. 15,249.

### UNITED STATES v. GRATIOT et al.

[1 McLean, 454.] [1]

Circuit Court, D. Illinois. June Term. 1839.

PUBLIC LANDS—POWER TO LEASE MINES—TERMS OF LEASE—STATE SOVEREIGNTY.

1. Congress have power to authorize the president to lease lead mines.

2. These mines being designated in the law of 1807 [2 Stat. 449] as being within the Indiana territory, may still be leased under the law, though the territory has been divided and afterwards organized into two states.

3. The term "territory," in this respect, is used as descriptive of the locality of the mines, and not to limit the exercise of the power to any subdivisions of it.

4. The lease being for smelting ore is within the law. It is unnecessary for the lease to require the lessee to perform all the operations of mining.

5. Such a power exercised by the federal government. does in no respect interfere with state sovereignty.

6. It was a prudential and proper regulation to limit. in the lease, the price of land.

At law

Mr. Forman. Dist. Atty., for the United States.

Mr. Breese, for defendants.

Before McLEAN, Circuit Justice, and POPE, District Judge.

McLEAN, Circuit Justice. This action is brought on a lease of a lead mine, and by the pleadings and in the argument, the question is raised as to the power of congress to authorize the leasing of lead mines, or any part of the public lands.

It is insisted that this is a government of limited powers, and that unless specially giv-

[1] [Reported by Hon. John McLean, Circuit Justice.]

en. no power can be exercised by it. No one can dispute the position, that the powers of the federal government are limited, and that it can exercise none, as principal powers. which are not delegated to it. But it is impossible in a constitution to specify in detail, every power which, of necessity, must be exercised by every government. Congress have power, by the constitution, to establish post offices and post roads, and under this delegation of power, the post office department, in its numberless details, is regulated, and severe punishments inflicted for a depredation upon the mail or a wilful obstruction of its conveyance. There is no express power authorizing congress to regulate the duties of post master, or the duties of the post master general; or to punish for stealing a letter from the mail; and yet no one has ever doubted, the power of the federal government to act on these subjects. It necessarily results from the exercise of the main power, to establish post offices and post roads. It would be in vain to establish, unless there be power to protect and sustain, that which is established. Hence there are powers of a secondary or dependent character, which result from a principal power, that may be exercised though not specifically given in the constitution. The constitution was adopted by practical men, and it was designed for practical purposes. And that refinement of construction which refuses to the federal government powers essential to its existence. must be discarded. A power is not to be repudiated. because the constitution does not, in terms, give it. But, on the other hand, powers are not to be exercised by implication, which are not dependent on, and do not result from, a principal power clearly given. There is danger from either extreme.

In the third section of the sixth article of the constitution it is declared "that congress shall have power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States; and nothing in this constitution shall be so construed as to prejudice any claims of the United States, or of any particular state." And in the fifth section of the act of March 3. 1807, it is provided that the several lead mines in the Indiana territory, together with as many sections contiguous to each, as shall be deemed necessary by the president of the United States, shall be reserved for the future disposal of the United States; and any grant which may hereafter be made for a tract of land containing a lead mine. which had been discovered previous to the purchase of such tract from the United States, shall be considered fraudulent and null, and the president of the United States shall be. and is hereby authorized to lease any lead mine which has been. or may hereafter be. discovered in the Indiana territory. for a term not exceeding five years. In other acts of congress, before and subse-

quent to this one, reservations are made of lands containing salt springs, live oak, &c. and salt springs have been leased under a similar authority to that which is given to lease lead mines.

If, under the constitution, congress have power to make all needful rules and regulations respecting the territory of the United States, there would seem to be no ground to doubt, that they may authorize the public lands to be sold or leased as they may deem needful. And they may make donations of the same for objects of national interest. This, it is admitted, may all be done so long as the land remains within a territory of the United States; but it is contended that it is incompatible with state sovereignty, to exercise the power within a state. Since the passage of the above act the states of Indiana and Illinois have been formed, within the limits of the Indiana territory, as they were established in 1807. And the lead mine in question is within the state of Illinois. A doctrine somewhat similar to this was at one time advanced, with some prospect of embodying in its favor, a strong public feeling. It was indeed not only asserted that the laws of the United States, which regulated the sale of the public lands within a state were void; but that the lands rightfully belonged to the state. This doctrine was well calculated to enlist in its behalf local feelings and interests; but the sober sense of public sentiment gave little encouragement to so novel and dangerous an error. The constitutional provision in regard to the power of congress over the public lands, applies without reference to the local political jurisdiction, within which they are situated. This position will not be controverted by any one successfully, who admits the constitution of the United States to be the paramount law. This power over the public lands does not extend to the exercise of a political jurisdiction. It is a special and limited jurisdiction, that applies exclusively to regulations respecting the lands. And this jurisdiction is as clearly given in the constitution, as any one of the enumerated powers delegated to the federal government. Where a political jurisdiction is derived, as within the District of Columbia, and over sites for forts and arsenals, the constitution has made provision for a cession of such jurisdiction. And the power over the public lands is specifically given by a cession or delegation from the states, to the federal authority. How the exercise of this power is incompatible with state sovereignty, I cannot perceive. When we speak of state sovereignty, we do not speak of a sovereignty without limitation. A state cannot declare war, impair the obligations of a contract, coin money, emit bills of credit, or do many other things which belong to sovereignty. State sovereignty is absolute and unconditional, where no limitations are imposed. But the power of a state over the public lands is necessarily inhibited by the delegation of the power to the federal government. The states having given up the power, cannot exercise it. Over an organized territory of the United States, congress have the exclusive power of legislation. The above constitutional provision in regard to the public lands, was not necessary to give congress the power to adopt all needful regulations respecting them within a territory of the United States. The provision was intended to secure the exercise of the power over the property of the Union within the states. Unless this was the intention, it must have been adopted without any sensible or necessary object.

The act authorizing the president to lease lead mines, refers to them as situated in the territory of Indiana: but this is merely descriptive of the locality of the mines; and does not limit the exercise of the power to the boundaries of Indiana as they might afterwards be changed. The lead mines within the original limits of the territory were the mines which the law authorized the president to lease; and no subdivision of the territory, or change from a territorial to state governments, can affect the exercise of the power. Congress, in the exercise of their discretion, determined that to lease lands which contain lead mines is a needful regulation; and I should like to know where the power exists to declare that this is not a needful regulation. There is nothing in the compact of cession of these lands which forbids it; and it does not, in any respect, infringe upon the rights of the state. But it is said that this is a lease, for smelting lead ore, in which the price is regulated, and not for working the mine.

This objection to the lease cannot be sustained. Digging the ore and smelting it, may be included in the same lease, or these operations may be the subject of distinct leases. In either case the lease is within the law, as it is literally a lease of a lead mine. Not indeed requiring the lessee to carry on all the operations of mining, but one of its important branches, or all of them, as shall be deemed best under all the circumstances of the case. The limitation imposed on the price of the manufactured article is a very proper regulation in the lease; as it prevents monopolies, and other consequences injurious to the public, by a combination of the lessees. The argument is not sustainable, that if the United States may do this, they may engage in any other traffic, within a state, and regulate prices at pleasure. This consequence does by no means follow.

The government has a right to prevent trespasses upon the public lands, and to admit settlers on such terms as it shall think proper. It has a right to lease lead mines, and to include such parts of the adjacent land as are necessary to the working of the mines. And it has a right to stipulate with the lessee, as one of the conditions of his lease, that he

shall sell the ore he digs, or the lead he manufactures, at a fixed price. I can see no possible objection to such a regulation. It is one that any individual, on leasing a farm, may make. He may stipulate with the lessee that he shall sell his grain at a fixed price, and that the lessor shall have the option of buying it. Such a contract, being voluntary. is binding; and so is the contract in question. For many years the government rented salt springs, in Illinois, Ohio, and perhaps in other states; and it is believed to have been the practice to fix in these leases the price at which the salt should be sold. Such a provision instead of aiming to monopolize, is calculated to guard against a monopoly. Its effects instead of being injurious must be beneficial to the community. But, however this may be. it is clear to my mind, that such a regulation in no respect interferes with the sovereignty of the state, or any local law which the state has power to pass. I am, therefore, of the opinion that the lease is within the law. and is binding on the lessees and that the demurrer must be overruled.

The district judge being of a different opinion from the one here expressed. the points were certified to the supreme court for a decision, under the act of congress. This case was taken to the supreme court and the above views were sustained by that court. 14 Pet: [39 U. S.] 526.